UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BRYAN MONTEMAYOR, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | |
| § | CIVIL ACTION H-11-2436 |
| TRIUMPH HEALTHCARE, f/k/a § | |
| REHABCARE GROUP, INC., a/k/a § | |
| KINDRED HEALTHCARE OPERATING, INC. § | |
| § | |
| *Defendant*. § | |

## ORDER

Pending before the court is defendant Triumph Healthcare, L.L.C./RehabCare Group, Inc.'s ("RehabCare") motion for summary judgment. Dkt. 19. Upon consideration of the motion, the response, and applicable law, the motion is GRANTED.

## I. BACKGROUND

The defendant New Triumph Healthcare of Texas, L.L.C./RehabCare Group, Inc. ("RehabCare")[1] hired the plaintiff, Brian Ross Montemayor, as a "Corporate Accounting Manager" on February 20, 2006 in Houston, Texas. Dkt. 19-4, Ex. C. In the fall of 2009, Triumph and RehabCare began discussing a deal in which RehabCare would acquire Triumph. Dkt. 19-8, Ex. G. As a result of the merger, certain job positions identified as redundant would subsequently be eliminated. Dkt. 19-9, Ex. H. Montemayor knew of the merger in advance due to his managerial position and was informed on November 4, 2009 that his job would be eliminated on April 30, 2010.

---

[1] Plaintiff improperly named defendant in his complaint. Triumph Healthcare L.L.C. ("Triumph") was acquired by RehabCare Group, Inc. on November 24, 2009, prior to Montemayor's termination. RehabCare Group, Inc. was, in turn, acquired by Kindred Healthcare Operating, Inc. in June 2011. Montemayor was never employed by Kindred Healthcare Operating, Inc.

*Id.*, Dkt. 19-1, Ex. A at 6-7. Montemayor received a severance package and continued to work at RehabCare. Dkt. 19-9, Ex. H. Meanwhile, Leigh Anne Steele, who reported to Montemayor, e-mailed a co-worker on October 29, 2009 claiming that she was scared of Montemayor. Dkt. 19-6, Ex. E; Dkt. 19-5, Ex. D. On November 4, 2009, the day that Montemayor received the news that his position was to be eliminated, he sent an e-mail to his co-workers about a news story in which a man stabbed himself before walking into the workplace. Dkt. 19-10, Ex. I. The subject line of the email was "I hope this doesn't happen at Triumph." *Id*. Two days later, on November 6, 2009, Montemayor sent another e-mail to his co-workers about a man opening fire in the office of his previous employer. Dkt. 19-11, Ex. J.

On December 11, 2009, an anonymous tip placed to the company's compliance hotline claimed that Montemayor had repeatedly threatened to shoot up the building on April 30, 2010, the day his position was to be eliminated. Dkt. 19-12, Ex. K. In addition, the caller claimed that Montemayor would have "violent outbursts where he kicks boxes and punches walls." *Id*. The caller stated that he or she "is concerned for his/her safety and the safety of his/her co-workers." *Id*. As a result, when Montemayor arrived at work the next Monday, December 14, 2009, RehabCare's Human Resources director informed Montemayor that a "call ha[d] been made to the RehabCare hotline [saying that he] had made threatening and harassing remarks . . . " Dkt. 22-2, Ex. A at 95–6. In light of the hotline call, the Human Resources director asked Montemayor to leave the premises immediately. Dkt. 22-2, Ex. A at 96–7. RehabCare then hired security and conducted an investigation into the claims. Dkt. 19-7, Ex. F; Dkt. 19-13, Ex. L.

The investigation resulted in several affidavits from RehabCare's employees. Dkt. 19-13, Ex. L. Some of the employees alleged that Montemayor had threatened to bring weapons to work,

2

blow up or shoot up the office, and stated that certain members of management deserved to die. Dkt. 19-13, Ex. L. The employees also produced the emails Montemayor had sent regarding incidents of workplace violence. Dkt. 19-10, Ex. I; Dkt. 19-11, Ex. J. RehabCare terminated Montemayor's employment on January 2, 2010. Dkt. 19-14, Ex. M.

In the mean time, Harris County also brought a harassment charge against Montemayor on December 16, 2009. Dkt. 19-15, Ex. N. However, the District Attorney later dismissed the charge, finding that no threats had been made by telephone, writing, or electronic communication. Dkt. 19-16, Ex. O.

Montemayor filed suit against RehabCare for race discrimination in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Dkt. 10. RehabCare now moves the court for summary judgment, and Montemayor has responded. Dkts. 19, 24.

## II. LEGAL STANDARD

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). A fact issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the [nonmovant]." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the [nonmovant], there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986).

When the movant bears the burden of proof on an issue, he must establish beyond peradventure *all* of the essential elements of the claims or defenses to warrant judgment in his favor. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). But when the movant does not bear the burden of proof on a claim or affirmative defense, he bears the initial burden of production to show an absence of evidence to support the non-movant's claim. *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002). If the movant makes this showing, the ultimate burden to avoid summary judgment shifts to the non-movant who "must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial." *Davis-Lynch, Inc., v. Moreno*, 667 F.3d 539, 550 (5th 2012). Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation are no substitute for specific facts showing a genuine dispute for trial. *TIG Ins. Co.*, 276 F.3d at 759.

### III. ANALYSIS

Title VII of the Civil Rights Act of 1964 ("Title VII") makes it unlawful for an employer to discharge an employee because of her "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). A plaintiff can prove intentional discrimination through either direct or circumstantial evidence. *See Urbano v. Continental Airlines Inc.*, 138 F.3d 204, 206 (5th Cir. 1998). Direct evidence is evidence which, if believed, proves the fact without inference or presumption. *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (citing *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir.1993)). When race discrimination claims are based on circumstantial evidence, courts apply the McDonnell Douglas burden-shifting framework. *Harrison v. Corrections Corp. of Am.*, 476 Fed App'x 40, 43 (5th Cir. 2012). "Employment discrimination claims brought under 42 U.S.C. 1981 . . . are analyzed under the evidentiary framework applicable

to claims arising under Title VII." *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999).

"Under the first step of the McDonnell Douglas framework, the plaintiff must establish a prima facie case." *Harrison*, 476 Fed. App'x at 43. "After the plaintiff establishes a prima facie case, the burden 'shift[s] to the employer to articulate some legitimate, nondiscriminatory reason for the [action].'" *Id.* (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817 (1973)). "If the defendant offers such a reason, the burden shifts back to the plaintiff to show that either (1) the defendant's alleged justification was pretext for discrimination, or (2) that the defendant's reason, although true, is only one of the reasons for its conduct and that another motivating factor was the plaintiff's protected characteristic." *Bissett v. Beau Rivage Resorts, Inc.*, 442 Fed. App'x 148, 151–52 (5th Cir. 2011) (citing *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir.2007)). The plaintiff bears the ultimate burden of persuading the trier of fact, by a preponderance of the evidence, that the employer intentionally discriminated against her because of her protected status. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219–20 (5th Cir. 2001).

RehabCare argues that summary judgment should be granted because Montemayor cannot (1) make out a prima facie case of discrimination, or (2) demonstrate that RehabCare's legitimate nondiscriminatory reason for terminating Montemayor's employment is pretext. To establish a *prima facie* case, a plaintiff must show that "(1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) others similarly situated were more favorably treated." *Willis v. Coca Cola Enters., Inc.*, 445 F.3d 413, 420 (5th Cir. 2006) (quoting *Rutherford v. Harris County, Tex.*, 197 F.3d 173, 184 (5th Cir. 1999)); *Jatoi v. Hurst-Eules-Bedford Hosp. Auth.*, 807 F.2d 1214, 1219 (5th Cir. 1987)). Here, RehabCare does not

dispute that Montemayor has established the first three elements. Montemayor is a member of a protected class—Hispanic, he was qualified for the position of Corporate Accounting Manager, and he was terminated from his employment with RehabCare. Instead, the parties' dispute centers around the fourth element of Montemayor's *prima facie* case—that others similarly situated were more favorably treated.

To succeed on this fourth prong of the prima facie case, a plaintiff must show that disparate treatment was given to coworkers who were "similarly situated." *Okoye v. Univ. of Tex. Houston Health Science Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001). The Fifth Circuit defines "similarly situated" very narrowly. *See Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009). "[A]n employee who proffers a fellow employee as a comparator [must] demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'" *Id*. at 260 (5th Cir.2009) (quoting *Little*, 924 F.2d at 97 (5th Cir.1991)); *see also Perez v. Tex. Dep't of Criminal Justice, Inst'l Div.*, 395 F.3d 206, 213 (5th Cir. 2004) ("We . . . have explained consistently that for employees to be similarly situated those employees' circumstances, including their misconduct, must have been 'nearly identical.'"). The "nearly identical" standard is a stringent standard—employees with different responsibilities, different supervisors, different capabilities, different work rule violations or different disciplinary records are not considered to be "nearly identical." *Player v. Kan. City S. Ry. Co.*, 496 Fed. .App'x 479, 481 (5th Cir. 2012) (quoting *Lee*, 574 F.3d at 259-60 (5th Cir. 2009).

Montemayor alleges that Mark Garner, a Caucasian male who was the former Assistant Vice President of Materials Management, also harassed employees, but was not terminated. Montemayor held the position of a Corporate Accounting Manager and was reported to the compliance hotline

regarding allegations of future workplace violence. Mark Garner is a materials manager and was alleged to have yelled profanities at a fellow co-worker. It is unclear whether Garner was reported via a compliance hotline call. Regardless, because Montemayor and Garner worked in different departments with different supervisors, had different responsibilities, and committed different infractions, Montemayor has not met the "similarly situated" standard articulated in *Lee*. Therefore, because Montemayor cannot meet the fourth element of the *McDonnell Douglas* analysis, he fails to show a prima facie case of race discrimination. Accordingly, summary judgment is appropriate on plaintiff's claims.

### IV. CONCLUSION

Pending before the court is defendant's motion for summary judgment. Dkt. 19. Because Montemayor cannot meet his burden to demonstrate a prima facie case of discrimination under Title VII and 19 U.S.C. § 1983, the motion is GRANTED. Plaintiff's claims are DISMISSED with prejudice.

It is so ORDERED.

Signed at Houston, Texas on June 25, 2013.

_____
Gray H. Miller
United States District Judge